# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC,<br><br>                    Plaintiff,<br><br>      v.<br><br>VOLTAGE, LLC AND NINGBO VOLTAGE SMART PRODUCTION CO.,<br><br>                 Defendants. | Case No. 1:25-cv-026-WO |

## PLAINTIFF SHOALS TECHNOLOGIES GROUP, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DEFENDANTS TO RESPOND TO CERTAIN DISCOVERY REQUESTS

## <u>TABLE OF CONTENTS</u>

I.    QUESTION PRESENTED.................................................................................1

II.   NATURE OF THE MATTER BEFORE THE COURT..............................1

III.  STATEMENT OF FACTS...........................................................................2

IV.  ARGUMENT.................................................................................................5

      A.    Financial Records From the Voltage Entities Are Relevant to
             Shoals's Damages Case.......................................................................5

            1.    Organizational and Corporate Structure Charts........................7

            2.    Financial Records and Marketing Documents Relating to
                 the Accused Products as Kept in the Ordinary Course of
                 Business ...................................................................................9

            3.    Defendants' Restructuring and Related Accounting
                 Records....................................................................................14

            4.    Intracompany Agreements and Licenses .................................15

            5.    Documents Related to the Development of the Voltage
                 Lynx Product..........................................................................16

            6.    Documents Referencing Shoals And/Or its Products..............18

V.    CONCLUSION...........................................................................................19

## EXHIBITS

| Exhibit No. | Description |
|:---:|:---|
| 1 | Inv. 1438, R. Ge. Dep. Tr. (excerpted and highlighted) |
| 2 | Inv. 1438, A. Olson Dep. Tr. (excerpted and highlighted) |
| 3 | Inv. 1438, K. Comage Dep. Tr. (excerpted and highlighted) |
| 4 | Inv. 1438, K. Yang Dep. Tr. (excerpted and highlighted) |
| 5 | Inv. 1438, Hearing Tr. (excerpted and highlighted) |
| 6 | Inv. 1438, L. Wang Tr. (excerpted and highlighted) |
| 7 | 2025-09-12 J. Evans Ltr. to Defendants |
| 8 | Email Correspondence Between Parties' Counsels |
| 9 | Defendants' Objections and Responses to Shoals's First Set of Requests for Production (Nos. 1-41) (excerpted) |
| 10 | Defendants' Objections and Responses to Shoals's First Set of Interrogatories (Nos. 1-12) (excerpted) |
| 11 | Shoals's First Set of Requests for Production (Nos. 1-41) (excerpted) |
| 12 | Shoals's First Set of Interrogatories (Nos. 1-12) (excerpted) |

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
No. 3:15-CV-00164-J-20MCR, ECF No. 96 (M.D. Fl., Aug. 2,
2018) ...............................................................................................16

*Artist Revenue Advocs., LLC v. West*,
No. 2:24-CV-06018-MWC-BFM, 2025 WL 2014313 (C.D. Cal.
May 19, 2025)..................................................................................17

*Blackstrap Industries, Inc. v. Rockbros USA LLC*,
No. CV 24-7378 (MAS) (RLS), ECF Nos. 47, 49 (D.N.J. May 27,
2025) ...............................................................................................12

*Certain Photovoltaic Trunk Bus Cable Assemblies and Components
Thereo*f,
Inv. No. 337-TA-1438 ..............................................................*passim*

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
946 F.3d 1367 (Fed. Cir. 2018) ........................................................20

*Godo Kaisha IP Bridge 1 v. TCL Communication Tech. Holdings Ltd.*,
No. 15-634-SLR-SRF, ECF No. 342 (D. Del. Dec. 14, 2017)............12

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)............................................................................20

*Kinetic Concepts, Inc. v. ConvaTec Inc.*,
268 F.R.D. 226 (M.D.N.C. 2010).....................................................10

*Kove IO, Inc. v. Amazon Web Servs., Inc.*,
No. 18 C 8175, 2021 WL 4516413 (N.D. Ill, July 14, 2021)............15

*Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*,
872 F.2d 88 (4th Cir. 1989) ................................................................9

*Traverse LLC v. Amprius, Inc.*,
No. 3:20-cv-00484-RS, ECF No. 79 (N.D. Cal. Aug. 7, 2020),
ECF No. 84 (N.D. Cal., Aug. 28, 2020) .....................................13, 15

*YETI Coolers, LLC v. MacSports, Inc. et al.*,
  No. CV 24-06783-MEMF, ECF No. 69 (C.D. Cal. May 1, 2025) ......................12

**Statutes**

19 U.S.C. 1337(d), (f) ...........................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .......................................................................................9

Fed. R. Civ. P. 37(a)(4) .......................................................................................9

L.R. 7.3 (d) ........................................................................................................24

Rule 26(b) ...........................................................................................................9

Rule 26(e) ......................................................................................................9, 12

Rule 34 ................................................................................................................9

Rule 37 ................................................................................................................9

# I. QUESTION PRESENTED

Whether Defendants should be compelled to produce documents from both the Accused U.S. entity and foreign entity and related foreign affiliates where such information is directly relevant to Plaintiff's damages, infringement (including indirect and willful infringement), and unfair competition claims and Defendants have failed to produce such information despite repeated requests.

# II. NATURE OF THE MATTER BEFORE THE COURT

Plaintiff Shoals Technologies Group, LLC ("Plaintiff" or "Shoals") hereby moves for an order compelling Defendants Voltage, LLC and Ningbo Voltage Smart Production, Co. (collectively, "Defendants" or "Voltage") to substantively respond to Shoals's Interrogatory Nos. 7-10, 12 and produce documents responsive to Shoals's Request for Production Nos. 1, 4, 8, 15-28, 35, and 39. These discovery requests seek Defendants' financial information, details on the interrelationship between various Voltage entities, sales and marketing information, Lynx product development information, and information relating to Shoals and its products. Plaintiff sent a formal discovery dispute letter detailing Defendants' numerous discovery deficiencies to Defendants on September 12, 2025. Ex. 7 (providing a detailed account of information Shoals is aware of but has not been produced based on discovery in the ITC proceeding, the evidentiary hearing for which was held in late August 2025). The parties met and conferred on September 19, 2025, and

-1-

September 22, 2025, and were unable to resolve the issue. As a result, Plaintiff respectfully asks for the Court's assistance in resolving this dispute.

## III. STATEMENT OF FACTS

Shoals filed this patent infringement action on January 9, 2025, accusing Defendants of infringing the Asserted Patents. As the Court is aware, Shoals and Defendants are parties to a separate proceeding pending before the U.S. International Trade Commission, *Certain Photovoltaic Trunk Bus Cable Assemblies and Components Thereo*f, Inv. No. 337-TA-1438 (the "ITC Proceeding"). The ITC Proceeding centers on the parties' respective solar assemblies: Plaintiff's BLA and Defendants' Lynx Trunk Bus Assembly as well as the projects (*i.e.*, "installations") in which those products are implemented. The ITC Proceeding overlaps with this action and involves the same alleged infringement of the 375 and 376 Patents as alleged here.[1]

While the ITC Proceeding was ongoing, Shoals served Voltage with its first sets of Interrogatories and Requests for Production in this action on May 23, 2025. Many of these requests seek information directly relevant to Shoals's claim for damages and infringement (including issues of willfulness and indirect infringement

---

[1] On September 10, 2025, Plaintiff moved for leave to file a second amended complaint to add a claim of infringement for one newly issued patent, U.S. Patent No. 12,407,295 (the "295 Patent").

not at issue in the ITC) in this action.[2]  For example, RFP No. 1 seeks the organizational structure of Voltage entities; RFP Nos. 4 and 8 seek documents regarding the development of the Lynx and documents relating to Shoals, its products, and its patents; Interrogatory No. 12 seeks information concerning Defendants' claim of no willful infringement; Interrogatory Nos. 7-8 and RFP Nos. 16, 25-27, and 39 seek information pertaining to sales and customer data; RFP Nos. 20-22 and 24 seek revenue, cost, and profitability information for the Accused Products; RFP No. 23 seeks formal accounting statements relating to the Accused Products; Interrogatory Nos. 9-10 and RFP Nos. 17-19 and 28 seek agreements relating to the Accused Products; RFP No. 35 seeks marketing and promotional material of the Accused Products; and RFP No. 15 seeks market studies and analyses regarding the Accused Products and competing products. *See* Ex. 9; *see* Ex. 10; *see* Ex. 11; *see* Ex. 12.

Voltage served its objections and responses to Shoals's first sets of Interrogatories and RFPs – nearly a month late – on July 10, 2025.  *Id.*  In response to RFP Nos. 1, 15, 16, 20-25, 26, 27, and 39, Defendants agreed to produce documents and/or documents "sufficient to show the sales of the Accused Products

---

[2] The ITC does not have authority to award monetary damages.  Instead, the Commission may issue exclusion orders barring importation of infringing products and cease and desist orders directed to unfair acts in the importation of goods.  *See* 19 U.S.C. 1337(d), (f).  Because monetary relief is unavailable, Shoals's efforts in discovery in the ITC proceeding were not directed to quantifying monetary damages and Defendants did not produce such documents.

on or after June 18, 2024." In response to RFP Nos. 17-19, Defendants agreed to produce documents and/or documents regarding the sales process for the Accused Products, patent license agreements Voltage entered that are relevant to the Voltage Lynx Trunk Bus, and co-development or technology transfer agreements related to the Voltage Products. In response to RFP No. 35, Defendants agreed to produce documents "sufficient to show Voltage's marketing and sales of the Accused Products in the United States." *See* Ex. 9; *see* Ex. 11.

In response to Shoals's Interrogatories, Defendants identified individuals and/or documents. However, Defendants' responses are insufficient. With respect to Interrogatories 7-10, Defendants disclose a single individual as a knowledgeable individual and/or identify VOLTAGE_00033940. *See* Ex. 10; *see* Ex. 12. However, VOLTAGE_00033940 is a single spreadsheet, limited in time and content, that does not contain all the information encompassed by Interrogatories 7-10. *See* Ex. 7 at 1-2. Further, testimony and production in the parallel ITC Proceeding do not provide sufficient information because Defendants' sales were not directly at issue there. Additionally, it is Shoals understanding based on prior testimony that the identified individual is not familiar with accounting systems or other financial data in a manner sufficient to provide meaningful information to support a damages analysis.

Defendants' commitment to producing documents, even though their responses are not commensurate to the scope of the request, has proven illusory.

Four months have passed without a single production or supplementation of discovery responses. Having not received any documents concerning damages or other financial information or any supplementation concerning infringement (including willful infringement which was not at issue in the ITC proceeding) responsive to Plaintiff's discovery requests, Plaintiff sent a formal discovery dispute letter to Defendants on September 12, 2025, identifying certain specific deficiencies in Defendants' objections and responses. Ex. 7. The parties met and conferred on September 19, 2025, and September 22, 2025, and have exchanged correspondence on the issue, but the parties remain at an impasse. Ex. 8. Concerningly, for the vast majority of categories of missing documents and information, Voltage refused to even provide confirmation that it has performed a reasonable search. *Id.* Voltage's refusal to comply with its discovery obligations is preventing Shoals from meaningfully moving forward in this case (*e.g.*, by noticing and scheduling depositions of knowledgeable personnel).

## IV. ARGUMENT

### A. Financial Records From the Voltage Entities Are Relevant to Shoals's Damages Case

Under Fed. R. Civ. P. 26(b)(1), Shoals is entitled to discovery of all "nonprivileged matter that is relevant to any party's claim or defense." Rule 34 further provides, in relevant part, that "[a] party may serve on any other party a request within the scope of Rule 26(b) … to produce and permit the requesting party

or its representative to inspect, copy, test, or sample [various items] in the responding party's possession, custody, or control." Under Rule 26(e), a party has a duty to supplement its discovery responses when it learns of new information. Rule 37 describes that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). This Court has broad discretion to determine whether discovery is relevant and whether a motion to compel brought under Rule 37(a)(1) should be granted. *Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (explaining that Rule 37 "gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders"). The party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. *Kinetic Concepts, Inc. v. ConvaTec Inc.,* 268 F.R.D. 226, 243 (M.D.N.C. 2010).

Shoals has not received the requested financial records, agreements, and corporate organization and structure documents from Defendants in this action despite asking for this information four months ago. To date, the only financial document Defendants refer to in response to Shoals's Interrogatories is a single spreadsheet generated during the ITC Proceeding – a proceeding where monetary damages are not at issue. That lone spreadsheet (which is not kept in the ordinary course of business but created for litigation purposes) is woefully inadequate to

satisfy Voltage's duty to respond to Shoals's reasonable requests for information pertinent to its damages claim. To the extent Defendants contend there are no responsive documents, they must supplement their discovery responses to say so. Defendants have not even supplemented their responses to state that they do not have the requested information in their possession, custody, or control, as would be required to meet their discovery obligations and in accordance with the Local Rules. Defendants' refusal to provide core financial information that it must maintain as a matter of course has left Shoals unable to obtain even the most basic discovery necessary to set forth its case for monetary relief. This concern is heightened by the fact that discovery closes in just four weeks under the current schedule (ECF No. 29) and Shoals has yet to receive any substantive response.

## 1.    Organizational and Corporate Structure Charts

Defendants, as Shoals came to understand during the ITC Proceeding, are part of a network of related foreign entities. *See* Ex. 7 at 2-3 (providing Shoals's limited understanding of Defendants' foreign affiliates). However, Shoals does not have a clear picture of how these entities are structured, how they interrelate, or what roles they play in the manufacture, importation, and/or sale of the Accused Products. Based on at least the deposition of various Voltage personnel in the ITC Proceeding, including Voltage's co-founder, Shoals understands that at least some of these Voltage entities, including but not limited to the named Defendants, are involved in

the design, manufacturing, and/or sale of the Accused Products. *See* Ex. 7 at 2-3; *see also* Ex. 1 (Ge), Tr. 263:19-264:17; Ex. 2 (Olson), Tr. 118:5-13, 113:4-6; Ex. 3 (Comage), Tr. 56:10-22; 57:1-21. However, Shoals's knowledge of the functions of these various entities as well as their interrelationships, financial and/or otherwise, is limited due to Defendants' refusal to provide *any* further information beyond that provided in the ITC Proceeding, which itself was bare. Defendants did not and have not produced *any* financial materials relating to these entities, nor have they provided even the most basic documents establishing the organizational structure of the various related Voltage entities. *See* Shoals's RFP No. 1. Defendants have not even provided an updated organizational chart for Voltage, LLC, as is their duty under Fed. R. Civ. Pro. 26(e), which would demonstrate departures and additions of various Voltage employees. Absent this directly relevant and highly probative information, Shoals cannot determine which entities are financially responsible for the sales of the Accused Products in the United States, or whether Defendants are shielding financial information behind foreign affiliates. At a minimum, Defendants should be ordered to produce basic organizational, corporate structure charts, and related basic documents and information identified by Voltage corporate witnesses during the ITC proceeding. *See, e.g.*, *Blackstrap Industries, Inc. v. Rockbros USA LLC*, No. CV 24-7378 (MAS) (RLS), ECF Nos. 47, 49 (D.N.J. May 27, 2025) (ordering defendant to produce documents regarding corporate structure and

financial documents); *YETI Coolers, LLC v. MacSports, Inc. et al.*, No. CV 24-06783-MEMF (RAOx), ECF No. 69 at *3 (C.D. Cal. May 1, 2025) (finding organizational structure of defendant entities is relevant to damages); *Godo Kaisha IP Bridge 1 v. TCL Communication Tech. Holdings Ltd.*, No. 15-634-SLR-SRF, ECF No. 342 at 9-10 (D. Del. Dec. 14, 2017) (ordering production of sales data from defendant's Chinese entities as kept in the ordinary course of business to "establish an accurate picture of the cost of the [Accused Products]" because "any profits reserved for the Chinese TCL entities must be accounted for in calculating the cost of the [Accused Products].").

### 2. Financial Records and Marketing Documents Relating to the Accused Products as Kept in the Ordinary Course of Business

In addition to producing updated corporate structure documents and organizational charts, Defendants must also produce sales and customer data (Interrogatory Nos. 7-8 and RFP Nos. 16, 25-27, and 39), revenue and cost information (RFP Nos. 20-22 and 24), profitability analyses, market analyses (RFP No. 15), and accounting statements (RFP No. 23) regarding the Accused Products as kept in the ordinary course of business since as early as the date of first sale of the Accused Products in 2021 to present. Shoals requires this information not just from Defendant Voltage, LLC, but also from its related foreign entities including named Defendant, Voltage Ningbo. *See CF Traverse LLC v. Amprius, Inc.*, No. 3:20-cv-

-9-

financial documents); *YETI Coolers, LLC v. MacSports, Inc. et al.*, No. CV 24-06783-MEMF (RAOx), ECF No. 69 at *3 (C.D. Cal. May 1, 2025) (finding organizational structure of defendant entities is relevant to damages); *Godo Kaisha IP Bridge 1 v. TCL Communication Tech. Holdings Ltd.*, No. 15-634-SLR-SRF, ECF No. 342 at 9-10 (D. Del. Dec. 14, 2017) (ordering production of sales data from defendant's Chinese entities as kept in the ordinary course of business to "establish an accurate picture of the cost of the [Accused Products]" because "any profits reserved for the Chinese TCL entities must be accounted for in calculating the cost of the [Accused Products].").

### 2. Financial Records and Marketing Documents Relating to the Accused Products as Kept in the Ordinary Course of Business

In addition to producing updated corporate structure documents and organizational charts, Defendants must also produce sales and customer data (Interrogatory Nos. 7-8 and RFP Nos. 16, 25-27, and 39), revenue and cost information (RFP Nos. 20-22 and 24), profitability analyses, market analyses (RFP No. 15), and accounting statements (RFP No. 23) regarding the Accused Products as kept in the ordinary course of business since as early as the date of first sale of the Accused Products in 2021 to present. Shoals requires this information not just from Defendant Voltage, LLC, but also from its related foreign entities including named Defendant, Voltage Ningbo. *See CF Traverse LLC v. Amprius, Inc.*, No. 3:20-cv-

00484-RS, ECF No. 79 (N.D. Cal. Aug. 7, 2020), ECF No. 84 (N.D. Cal., Aug. 28, 2020) (ordering defendant's production of corporate structure documentation and financial information as to itself and its foreign affiliates over objection that certain products were "manufactured, used, and sold 'by a different corporate entity in China'"). Shoals requires clarity as to which Voltage entity is responsible for managing and recording the finances related to the Accused Products. At present, with a month to the close of fact discovery, Shoals does not have clear documentation of which Defendant entity is booking the sales of the Accused Products. Shoals does not have sales information for each component of the Accused Products. Voltage's refusal to disclose this information has left Shoals in the dark as to the location of the relevant records and as to how records of revenues and costs are created and maintained. The deposition testimony of various Voltage personnel taken during the ITC Proceeding confirmed that these financial records do indeed exist. *See* Ex. 7 at 2; *see* Ex. 4 (Yang), Tr. 15:15-24; 70:18-71:15 (identifying location of sales information not produced), 93:3-94:2 (identifying sales reports not produced); *see* Ex. 1 (Ge), Tr. 263:19-264:17 (identifying pricing information between entities not produced). Yet still, Defendants seek to avoid providing this highly relevant discoverable information.

Defendants agreed only to search for and produce what they referred to as an "equivalent" of audited financial records for U.S. Defendant Voltage, LLC during

the parties' meet and confer. However, even this limited concession is uncertain as Defendants could not commit to when such documents would be produced or what categories of information they would contain. Shoals thus requests an order compelling Defendants to produce the audited financial records for Voltage, LLC, including the categories of information encompassed by Shoals's discovery requests (*e.g.*, price, units sold, profits, costs, sales, COGs, forecast sales information, P&Ls, etc.).

Further, Defendants appear to ignore that one of the named parties in this action is itself a Voltage Chinese entity, and Shoals's discovery requests expressly seek its financial information as well as from additional Voltage affiliates. The discovery requests at issue seek financial information from *all* entities involved in the design, manufacturing, and/or sale of the Accused Products because such information is directly relevant to damages. *See CF Traverse LLC v. Amprius, Inc.*, No. 3:20-cv-00484-RS, ECF No. 79 (N.D. Cal., Aug. 7, 2020), ECF No. 84 (N.D. Cal., Aug. 28, 2020) (rejecting defendant's argument that foreign activities of related entities are irrelevant to issues including infringement, invalidity, and damages). These materials bear directly on several *Georgia-Pacific* factors in conducting a reasonable royalty analysis, including the profitability of the accused products, the advantages of the patented technology over alternatives, and the portion of realizable profit attributable to the patented invention as distinguished from non-patented

features.  *See Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18 C 8175, 2021 WL 4516413, at *3-4 (N.D. Ill, July 14, 2021) (ordering production of high-level entity-wide financial records based on relevance to *Georgia Pacific* analysis).  Without access to Defendants' sales records, cost of goods sold, gross margins, and revenue allocations among the related entities, Shoals cannot establish the economic value of the patented technology or test Defendants' anticipated arguments on non-infringing alternatives.  These documents are thus integral to quantifying reasonable royalty damages.

Such documents also bear directly on the *Panduit* test for lost profits.  Under this framework, a patentee is required to provide detailed economic proof to reconstruct the market and demonstrate what it would have earned absent infringement.  *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, No. 3:15-CV-00164-J-20MCR, ECF No. 96 at 7-8 (M.D. Fl., Aug. 2, 2018) (ordering production of customer sales data and documentation based on relevance to lost profits analysis).  At minimum, this requires market studies and competitive analyses, information that Shoals does not have from Defendants despite having requested such documents.  *See* RFP No. 15.  Shoals has reason to believe that at least market analyses exist.  *See* Ex. 7 at 3; *See, e.g.*, Ex. 1 (Ge), Tr. 291:1-21.  And Voltage has not confirmed that it has performed a reasonable search for these documents, which have not been produced.

-12-

Shoals is concerned that limiting discovery to Voltage, LLC alone allows Defendants to obscure the true financial picture by withholding or sequestering responsive information in related foreign entities. Shoals cannot know what financial information exists behind Defendants' corporate structure, and that uncertainty underscores the need for full and fair discovery here. Defendants should not be permitted to hide highly relevant financial information behind foreign entities. This Court has recognized this principle in *Ultra-Mek, Inc. v. Man Wah (USA), Inc.*, ordering a subsidiary of a foreign entity to produce documents and information belonging to its related foreign entities. No. 1:16-cv-00041, ECF No. 63 at *12 (M.D.N.C. Dec. 28, 2016). Similar to Voltage, LLC, Man Wah (USA) was a subsidiary of Chinese entities with significantly overlapping management. *See id.* at *9-10. So too here, Defendants must produce the financial information of their closely related entities. *See, e.g.*, *Artist Revenue Advocs., LLC v. West*, No. 2:24-CV-06018-MWC-BFM, 2025 WL 2014313, at *3 (C.D. Cal. May 19, 2025) (finding discovery requests seeking the corporate structure of defendant and related entities relevant to the plaintiff's damages case).

With respect to marketing materials regarding the Accused Products, although Defendants agreed to produce documents in response to Shoals's RFP No. 35, their position during the parties' meet and confer on September 22, 2025, is inconsistent with their discovery response. Based on the meet and confer, Defendants refuse to

-13-

provide any marketing materials regarding the Accused Products beyond that produced during the ITC Proceeding. *See* RFP No. 35. Witness testimony offered at the ITC Proceeding confirms this information exists and is available. *See* Ex. 5 (Ge), Tr. 1057:1-15 (testifying about certain sample kits provided to customers); Ex. 4 (Yang), Tr. 65:10-15 (testifying about the existence certain manuals provided to Voltage customers). Such marketing documents are relevant at least to Shoals's claims of indirect infringement, willful infringement, false advertising, unfair competition, deceptive trade practices, and damages, yet Shoals does not have this information.

### 3. Defendants' Restructuring and Related Accounting Records

Shoals further seeks information concerning any recent restructuring of the Voltage entities, which is at least relevant to Shoals's RFP Nos. 1 and 18. Mr. Li Wang, one of Voltage's founders, provided vague deposition testimony in the ITC Proceeding concerning structuring and/or restructuring of the Voltage entities, but Shoals has not received any of this information in response to its discovery requests. Based on this testimony, Shoals has reason to believe that a number of documents have been prepared and provided to Voltage and/or its affiliates (*e.g.*, by accounting or consulting firms) in connection with the corporate structure of the Voltage group. *See* Ex. 7 at 3 (providing list of documents Defendants are withholding with respect to this issue); *see* Ex. 6 (Wang), Tr. 59:6-64:1, 74:22-75:15. Ms. Ge, one of

Voltage's founders, further confirmed the existence of a number of relevant financial reports that have not been produced. *See* Ex. 7 at 3 (providing list of documents Defendants are withholding); *see* Ex. 1 (Ge), Tr. 64:4-65:5, 75:12-22, 76:14-77:9, 93:21-94:7. These documents, more specifically identified by Shoals in its discovery letter to Voltage on September 12 (Ex. 7), were neither produced to Shoals during the ITC Proceeding nor in this action. These materials are necessary to understand how Defendants have organized their business and how financial responsibilities have shifted among entities, which are directly relevant to damages and infringement. Shoals respectfully requests that Defendants be compelled to produce these materials.

### 4. Intracompany Agreements and Licenses

Shoals also asks this Court to order Defendants to produce agreements between the various Voltage entities. *See* Shoals's RFP Nos. 17-19 and 28. Based on the limited information Shoals gleaned from the ITC Proceeding, multiple Voltage entities are potentially involved in the manufacture, importation, and/or sale of the Accused Products, yet Shoals has received no agreements reflecting any such arrangement. Shoals understands that some relationship exists relating to purchase orders involving the Accused Products and various Voltage entities. *See* Ex. 7 at 2 (providing more detailed information regarding the testimony of Mr. Olson); *see* Ex. 2 (Olson), Tr. 118:5-13. Mr. Olson further testified about where Voltage procures

-15-

its product. Ex. 2 (Olson), Tr. 113:4-6.  Ms. Katrin Comage additionally testified about services and purchases between Voltage entities. *See* Ex. 7 at 2 (providing additional detail); *see* Ex. 3 (Comage), Tr. 56:10-22, 57:1-21.  Based on the deposition transcripts from the ITC Proceeding, Shoals believes agreements or similar documentation should both exist and shed light on how each Voltage entity is economically tied to the Accused Products, providing Shoals with the necessary and complete financial picture of the revenues and costs regarding the Accused Products requested by its interrogatories and requests for production.

### 5.   Documents Related to the Development of the Voltage Lynx Product

Shoals has also requested that Defendants produce information and documents sufficient to show the development of the Lynx product.  (*see, e.g.*, Shoals's RFP No. 8). In response to RFP No. 8, Defendants agreed to produce documents, but Shoals has yet to see any production concerning the initial development of the Lynx product.  Such documents bear directly on Shoals's claim of willful infringement and other issues (*e.g.*, copying) as they may reveal, *e.g.*, when Defendants first became aware of Shoals's products, when Defendants first became aware of Shoals's patents, whether Defendants copied patented features or considered design-arounds, and whether Defendants disregarded the risk of infringement.  Such evidence goes to the core of Defendants' state of mind and intent, which is central to a willfulness determination, as well as to copying.  *Halo*

*Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 104-105 (2016) ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1377-1379 (Fed. Cir. 2018) (discussing facts relevant to determining willfulness post-*Halo*, including intentional copying and state of mind). Willful infringement was not an issue during the ITC Proceeding, but it is at issue in this action. During the parties' meet and confers, Defendants maintained that they had already produced all documents concerning the development of the Lynx product during the ITC Proceeding. Shoals disagrees. Neither Shoals nor its technical expert has seen any documents reflecting the *initial* development of the Lynx.

Defendants' interrogatory response on willful infringement underscores this deficiency, because without development documents and without a full interrogatory response, Shoals has no information with which to evaluate its willful infringement theory. In response to Shoals's Interrogatory No. 12, Defendants stated only that they had evaluated Shoals's patents and, based on advice of counsel, formed a good-faith belief that they did not infringe and that the Asserted Patents were invalid. This cursory response does not answer Shoals's Interrogatory No. 12, which asked Defendants to state the *entire factual basis* for their contention that their infringement is not willful and to identify any supporting documents. Defendants

have done neither. Without documents or information concerning the development of the Lynx, including initial development of the Lynx product, Shoals cannot test the accuracy of Defendants' bare and self-serving assertion of no willful infringement. Shoals therefore requests that the Court compel Defendants to produce all documents concerning the development of the Lynx product and to supplement their interrogatory responses with the factual bases and supporting documents relating to their contention that their infringement is not willful.

### 6. Documents Referencing Shoals And/Or its Products

Shoals has also requested documents discussing Shoals and/or its products. (*see, e.g.*, Shoals's RFP No. 4). Again, Defendants agreed to produce documents in response to this discovery request but have failed to produce anything in the last four months. Such documents are directly relevant to Shoals's unfair competition claims. *See* ECF No. 37 at ¶¶ 130-147. These claims were not at issue at the ITC Proceeding. During the meet and confer, Defendants maintained that they have already produced responsive information during the ITC Proceeding. However, Defendants were unable to identify any such documents or information during the meet and confer. If Defendants knew such documents existed, they should be able to readily identify and produce them in this action and to confirm that they conducted a search of their own files to locate responsive documents – an essential first step in fulfilling their discovery obligations. Shoals inquired into whether Defendants would agree to run

a key word search for responsive documents; Defendants refused to entertain the inquiry. Defendants were unable to identify any specific bates-numbered documents that they claim are responsive to Shoals's RFP No. 4. Instead, Defendants seem to shift that burden onto Shoals by suggesting that it search for responsive documents that Defendants produced in the ITC Proceeding. That is not how discovery works. Moreover, Shoals has done this search and confirmed these documents have not been produced. Shoals is entitled to receive relevant, responsive documents in this action, particularly given the bearing these documents have on a number of issues here (*e.g.*, willful infringement, unfair competition) that were not at issue in the ITC proceeding.

## V. CONCLUSION

Defendants have refused to provide core financial discovery and continue to avoid complying with their discovery obligations. Plaintiff is thus left with no choice but to seek an order from this Court compelling production of the very information it needs with respect to a central aspect of its case, the damages it is entitled to recover. Shoals thus respectfully requests that this Court order Defendants to produce documents and information responsive to Interrogatory Nos. 7-10, 12 and RFP Nos. 1, 4, 8, 15-28, 35, and 39.

**L.R. 7.3 (d) Certificate:** The undersigned hereby certifies that this Motion complies with the Local Rules. The word count of the body of the brief, headings, and footnotes is: 4329.

September 23, 2025          Respectfully submitted,

/s/ Jason D. Evans
Jason D. Evans, N.C. Bar No. 27808
Jason.Evans@troutman.com
TROUTMAN PEPPER LOCKE LLP
301 S. College St. 33rd Floor
Charlotte, N.C.28202
Tel: 704.916.1502

William Belanger
William.Belanger@Troutman.com
TROUTMAN PEPPER LOCKE LLP
125 High Street, 19th Floor High Street Tower
Boston, Massachusetts 02110-2736
Tel: 617.204.5100

Kimberly E. Coghill
Kimberly.Coghill@Troutman.com
Puja Patel Lea
Puja.Lea@Troutman.com
TROUTMAN PEPPER LOCKE LLP
401 9th Street, N. W.
Suite 1000
Washington, D.C. 20004
Tel: 202.220.1200

Mikaella M. Evaristo
*(Notice of Special Appearance to be Filed)*
Mikaella.Evaristo@Troutman.com
TROUTMAN PEPPER LOCKE LLP
875 Third Avenue
New York, NY 10022
Tel: 212.912.2791

**Counsel for Plaintiff Shoals Technologies, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record in this action.

This, the 23nd of September, 2025.

/s/ Jason D. Evans
Jason D. Evans, N.C. Bar No. 27808
Jason.Evans@troutman.com
TROUTMAN PEPPER LOCKE LLP
301 S. College St. 33rd Floor
Charlotte, N.C.28202
Tel: 704.916.1502