IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 1:25CV26 |
| VOLTAGE, LLC and NINGBO VOLTAGE SMART PRODUCTION CO., | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER AND MEMORANDUM OPINION
## OF UNITED STATES MAGISTRATE JUDGE

The plaintiff, Shoals Technology Group, LLC ("Shoals"), has sued the defendants, Voltage, LLC and Ningbo Voltage Smart Production Co. (collectively, "Voltage"), for patent infringement. *See generally* Docket Entry 74. Both Shoals and Voltage produce solar panel installations, and Shoals alleges that a particular part of Voltage's installation—the LYNX Trunk Bus ("LYNX")—infringes on one of Shoals's products. *See id*. ¶¶ 17, 31, 45, 73. The parties held a bench trial on equitable defenses that started on February 25, 2026 and concluded on March 5, 2026. *See* minutes entries dated 02/25/2026 and 03/05/2026. The parties' dispositive briefs are due on April 13, 2026, and a jury trial is scheduled for August 24–28, 2026. Docket Entry 83 at 3.

The case is now before the Court on Shoals's motion to compel Voltage to respond to certain discovery requests. Docket Entry 216. Shoals filed the instant motion on December 31, 2025, the same day discovery closed. The Court resolved paragraphs 1 and 4 of the motion on February 20, 2026. Docket Entry 374. The Court now turns to the remaining issues. As set forth below, the Court grants in part the remainder of Shoals's motion.

I.     DISCUSSION

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Generally, the party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (collecting cases); *accord Carlton & Harris Chiropractic Inc. v. PDR Network, LLC*, No. 3:15-CV-14887, 2024 WL 1451124, at *2 (S.D.W. Va. Apr. 3, 2024).

> A. Voltage must produce emails responsive to RFP Nos. 8, 12, and 56.

Shoals seeks emails between Voltage and Huatong, one of Voltage's business partners, regarding the development of the LYNX. *See* Docket Entry 215-1 at 27. The parties have consented to a rule preventing them from being "required to search for, collect, or produce emails in response to any document request" absent "good cause" and a "timely request . . . that leaves the other Party sufficient time to search for, collect, review, and produce responsive emails." *See* Docket Entry 45 ¶ 4. Thus, Shoals must demonstrate that its request was timely and good cause supported it. *See OptoLum, Inc. v. Cree, Inc.*, No. 1:17CV687, 2018 WL 6834608, at *4 (M.D.N.C. Dec. 28, 2018) (finding that a prior order preventing discovery of electronically stored information absent good cause operated as a "burden-shifting mechanism").

Shoals has carried its burden. Voltage did not inform Shoals that emails responsive to RFP Nos. 8, 12, and 56 might exist until December 29, 2025, *see* Docket Entry 215-1 at 27; Docket Entry 250 at 25, making Shoals's request for the emails on that day timely. Because communications about the development of the LYNX may support or undermine Shoals's claim of willful infringement, good cause exists.

Further, Voltage has made no argument that production of the emails would be unduly burdensome. *See* Docket Entry 250 at 19-20. Voltage only argues that the emails predate the patent at issue in this case. *See id.* at 20. But "evidence regarding pre-issuance activities may be relevant to establishing that post-issuance products constitute infringement." *Chimie v. PPG Indus.*,

2

*Inc.,* 402 F.3d 1371, 1382 (Fed. Cir. 2005).

Voltage must therefore produce all emails between Voltage and Huatong responsive to Shoals's RFPs 8, 12, and 56.

> B. Voltage must provide a factual response to Interrogatory No. 12, to the extent that such facts exist.

Shoals seeks a more "fulsome" response to Interrogatory No. 12. Docket Entry 216 ¶ 3.[1] This interrogatory asks Voltage to "state the entire factual basis supporting Your contention [that your infringement was not willful] and identify any supporting documents." Docket Entry 215-8 at 66.

A party is not required to plan an argument "based on all possible documents or information presented during depositions, but rather must be adequately informed by the opposing party, in response to proper discovery requests, which facts, theories, and documents will likely be relied upon at trial." *See Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*, 534 F. Supp. 2d 616, 625 (D. Md. 2008), *aff'd*, 310 F. App'x 404 (Fed. Cir. 2009) (unpublished).

Here, Voltage's response to Interrogatory No. 12—which asks for the "factual basis" of Voltage's argument against willful infringement—contains few facts. *See* Docket Entry 215-8 at 66–68. Instead, it contains various legal arguments: that Voltage did not infringe Shoals's patents, that the patents are invalid and unenforceable, that Voltage received no notice of infringement, and that Shoals has not carried its burden of showing willful infringement. *See id*. Voltage also states that it incorporates Ruiyan Ge's deposition testimony from prior litigation before the International Trade Commission, but—as Voltage appears to acknowledge—this testimony is not facially useful. *See* Docket Entry 250 at 24.

The Court therefore orders Voltage to specify which facts it will be relying on to argue against willful infringement, to the extent that such facts exist. However, if Voltage does not anticipate relying on any additional facts beyond those provided in its existing response (e.g., the facts supporting lack of notice), Voltage need not supplement its response.

---

[1] In its reply brief, Shoals also requests an additional deposition of Ruiyan Ge on this topic. Docket Entry 266 at 14 n.4. However, as the Court has previously told Shoals, it "may not consider arguments a party makes for the first time in a reply . . . because it would be unfair to the other party and would risk an improvident or ill-advised opinion on the legal issues raised." Docket Entry 201 (citing *Kelly v. Naples Prop. Holding Co., LLC*, 671 B.R. 432, 452 (D. Md. 2025)).

> C. Voltage must investigate and determine whether it can easily provide cost data by project.

The remaining information Shoals seeks is relevant to calculating damages. *See* Docket Entry 216 ¶¶ 5–7. Voltage sells the LYNX as a part of larger solar installation projects, and this Court previously determined that Shoals may discover cost data associated with all aspects of those projects, not just the LYNX. Docket Entry 201 at 4–5. The parties appear to agree that Voltage has now produced this information, but in a very inconvenient form: hundreds of individual sales order documents. *See* Docket Entry 215-1 at 16, 33; Docket Entry 250 at 25–28; Docket Entry 266 at 16. Shoals argues that Voltage can produce the data in a more useful form: a spreadsheet organized by project.[2] Docket Entry 215-1 at 29-35.

Under Federal Rule of Civil Procedure 33(d), a party can respond to an interrogatory by providing business records if the burden of deriving the answer from those records would be the same for either party. Similarly, Rule 34(b)(2)(E) only requires parties to produce documents in response to requests for production that the party keeps "in the usual course of business." As this Court noted in a previous order, "Rule 34 only requires a party to produce documents that exist at the time of the request; a party cannot be compelled to create a document for its production." Docket Entry 21 at 16 (citing *Atkins v. AT&T Mobility Servs., LLC*, No. 2:18-CV-00599, 2019 WL 8017851, at *6 (S.D.W. Va. Apr. 25, 2019)).

Under the above rules, whether Voltage must produce project-level data turns on whether that data is already available at the project-level to Voltage. If so, Voltage must produce it. But if it is not so available and providing it would unavoidably require combing through the hundreds of sales orders Voltage has already produced, that burden belongs to Shoals.

Unfortunately, the Court is flying blind. Voltage's response brief represents that "Voltage does not track sales based on project." Docket Entry 250 at 26. This suggests that extracting the data from the sales orders is unavoidable. But the source Voltage cites for this representation—Ruiyan Ge's deposition testimony—is not so clear. Although Ge testified that "it makes more sense to keep track [of

---

[2] The Court interprets Shoals's briefing to communicate that such production would resolve the remaining issues raised by Shoals's motion to compel, Docket Entry 216 ¶¶ 5–6. To the extent that Shoals is seeking any production regarding damages beyond that ordered below, the Court denies it as insufficiently briefed. For example, Shoals's reply brief suggests that it seeks production of transfer pricing between different Voltage entities, *see* Docket Entry 266 at 18, but Shoals's initial brief mentions transfer pricing only in its factual background, not its argument section, *see* Docket Entry 215-1 at 18, 19–35.

4

cost data] based on sales orders" instead of projects, Ge also testified that Voltage's internal database might "possibly" be able to produce a spreadsheet of costs by project. *See* Docket Entry 215-26 at 14–16. Further, during litigation before the International Trade Commission, Voltage produced spreadsheets containing cost data sorted by project. *See* Docket Entries 266-5, 266-6. It is not clear whether these sorts of records are regularly kept by Voltage, especially given that Shoals only mentioned them in its reply brief, depriving Voltage of the opportunity to respond. *See* Docket Entry 266 at 17.

The Court therefore orders that Voltage investigate and determine whether it can easily produce the cost data by project by, e.g., generating a report from its internal database. If Voltage can do so, it must, and it must provide all such data to Shoals that is responsive to Shoals's motion to compel, Docket Entry 216 ¶¶ 5–6. Otherwise, Shoals must assemble the data it seeks from the documents Voltage has already produced.

Once Shoals has received or assembled the relevant data, it may depose one individual based on what it has learned. The Court limits the deposition to questions for information responsive to Interrogatory Nos. 7, 8, 20, 24, and 25.

## II. CONCLUSION

The Court **GRANTS IN PART** Shoals's motion to compel, Docket Entry 216, as follows:

Voltage **SHALL** produce the emails responsive to Shoals's Requests for Production Nos. 8, 12, and 56. In response to Shoals's Interrogatory No. 12, Voltage **SHALL** specify any facts it will use to show non-willfulness, to the extent such facts exist.

Finally, Voltage **SHALL** investigate and determine whether it can easily produce the project-based data sought by Shoals's motion, Docket Entry 216 ¶¶ 5–6, using the existing reporting capabilities of its current database, and provide that data to Shoals if so. Once Shoals has received or assembled the data requested by Docket Entry 216 ¶¶ 5–6, Shoals **SHALL** be allowed to seek information responsive to Interrogatory Nos. 7, 8, 20, 24, and 25 by deposing one knowledgeable individual. The discovery deadline **SHALL** be extended to March 31, 2026, for the sole purpose of complying with this order.

_____
JoAnna Gibson McFadden
United States Magistrate Judge

March 11, 2026
Durham, North Carolina