UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHOALS TECHNOLOGIES GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Civil No. 1:25-cv-00026 |
| v. | ) ) ) | |
| VOLTAGE, LLC, and NINGBO VOLTAGE SMART PRODUCTION CO., | ) ) ) ) | By: Michael F. Urbanski Senior United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on defendants Voltage, LLC and Ningbo Voltage Smart Production Co.'s motion to dismiss certain claims in plaintiff Shoals Technologies Group, LLC's Third Amended Complaint. Mot. to Dismiss, ECF No. 86. In its motion to dismiss, Voltage seeks dismissal of Shoals's third and fourth claims for relief, which allege a violation of the North Carolina Unfair and Deceptive Trade Practice Act ("UDTPA") (Count Three) and unfair competition (Count Four). In addition, Voltage seeks dismissal of Shoals's patent infringement claims, Counts One, Two, and Five, "to the extent that they are based on alleged patent infringement of the newly alleged 'alternative designs.'" Id. at 1.

The court concludes that Counts Three and Four fail to sufficiently state claims for breach of the North Carolina UDTPA and unfair competition. Counts One, Two, and Five, alleging violations of Shoals's '375, '376, and '295 Patents are not subject to dismissal at this stage as the court has not been presented with evidence as to which products of Voltage are accused of infringement.

1

I.

A. Challenged Allegations of the Third Amended Complaint.

1. *Counts Three and Four.*

In Counts Three and Four, Shoals alleges that Voltage impermissibly used Shoals's Confidential Business Information obtained during a proceeding before the International Trade Commission[1] to "create purported 'alternative designs' to products employing technology protected by the '375 Patent and the '376 Patent, including the BLA [Big Lead Assembly]." Third Am. Compl., ECF No. 74, ¶ 73. See id. ¶ 80. Shoals asserts in Count Three that "Defendants have or intend to take to market these purported 'alternative designs,' which they could never have formulated without the nefarious use of Shoals's Confidential Business Information," id. ¶ 74, and in Count Four that this "unfair and deceptive conduct and unfair competition" . . . "are likely to deceive the public at large, and more specifically, the marketplace in which Shoals and Defendants compete for customers." Id. ¶¶ 80, 81.

As factual support for its unfair and deceptive trade practices and unfair competition claims, Shoals alleges that Voltage improperly used Shoals's Confidential Business Information produced in the ITC 1438 Investigation and subject to a Protective Order to develop alternative designs. See id. ¶¶ 40-48. Shoals describes its Confidential Business Information as follows:

> 42. The ITC Proceeding necessarily required that Shoals produce to Defendants certain materials related to the Shoals BLA, including but not limited to physical samples, schematic drawings, manufacturing documentation, and testing reports, all

[1] The International Trade Commission investigation referred to in the third amended complaint is *Re: Certain Photovoltaic Trunk Bus Cable Assemblies and Components Thereof*, Inv. No. 337-TA-1438 (the "ITC 1438 Investigation").

of which constitutes Shoals's highly-confidential and commercially sensitive trade information (the "Confidential Business Information").

Id. ¶ 42. Shoals alleges that this information was subject to a Protective Order in the ITC 1438 Investigation, id. ¶¶ 43-44, and that "[t]hereafter on information and belief, Defendant used Shoals's Confidential Business Information to create purported 'alternative designs' to products employing technology protected by the '375 Patent and the '376 Patent, including the BLA." Id. ¶ 45.

### 2. *Counts One, Two, and Five.*

Counts One, Two, and Five allege infringement of three Shoals patents, referred to as the '375, '376, and '295 Patents.[2] None of the operative paragraphs of these counts (Count One ¶¶ 49-58; Count Two ¶¶ 59-68; and Count Five ¶¶ 83-92) expressly mention Voltage's alternative designs, instead claiming infringement of the "Accused Products." Shoals defines "Accused Products" as follows: "including, but not limited to the Voltage LYNX Trunk Bus and what Voltage has publicly referred to as their 'alternative LYNX design.'" Id. ¶ 31.

### B. Voltage's Motion to Dismiss Arguments.

### 1. *Counts Three and Four.*

Voltage argues that the Third Amended Complaint fails to allege with sufficient specificity the Shoals Confidential Business Information allegedly misused and that Shoals fails to allege a plausible claim that Voltage violated the Protective Order in the ITC 1438

---

[2] Count One alleges infringement of U.S. Patent No. 12,015,375 (the "'375 Patent"); Count Two alleges infringement of U.S. Patent No. 12,015,376 (the "'376 Patent"); Count Five alleges infringement of U.S. Patent No. 12,407,295 (the '295 Patent").

3

Investigation.[3]  Voltage also argues that Shoals's UDPTA and unfair competition claims should be dismissed in favor of proceedings at the ITC, suggesting that "there already exists an extensive regulatory regime to address the violations." Voltage Mem., ECF No. 87, at 17, (quoting Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 110 (4th Cir. 2016)).

### 2. *Counts One, Two, and Five.*

Voltage maintains that Shoals may not contend that its alternate designs infringe the '375, '376, or '295 Patents because "Shoals has not alleged any infringing act in the United States." Voltage Mem., ECF No. 87, at 19. Even if Shoals could allege an infringing act, Voltage asserts that Shoals "has made no attempt to allege non-conclusory facts to support a plausible claim that the alternative designs infringe any of the Asserted Patents." Id. at 20.

### C. Shoals Opposition.

### 1. *Counts Three and Four.*

In its opposition, Shoals contends that its Third Amended Complaint sufficiently puts Voltage on notice of its unfair competition claims, that it provides enough factual matter to give rise to a reasonable inference of liability, and that discovery will confirm the extent of the violation. Shoals disagrees that its unfair trade practice and unfair competition claims should be decided in the ITC, suggesting that "its procedures for addressing protective-order breaches

---

[3] Although the third amended complaint alleges a breach of a Protective Order in the ITC 1438 Investigation, Third Am. Compl., ECF No. 74, ¶ 40-48, Shoals's opposition brief suggests that the misuse of its Confidential Business Information stemmed from their production of documents in an earlier ITC Investigation, *Re: Certain Photovoltaic Connectors and Components Thereof,* Inv. No. 337-TA-1365 ("ITC 1365 Investigation"), pursuant to a stipulation between the parties.

4

do not provide any meaningful remedy for Shoals's allegations of unfair competition." Shoals Opp'n, ECF No. 117, at 23.

### 2. *Counts One, Two, and Five.*

Shoals does not address Voltage's argument that Counts One, Two, and Five should be dismissed to the extent that they claim that Voltage's alternative designs infringe the '375, '376, and '295 Patents.

### D. Voltage's Reply.

#### 1. *Counts Three and Four.*

In its reply, Voltage suggests that in its opposition, Shoals pulls a rabbit of its hat by referencing exhibits related to the earlier ITC 1365 Investigation, not included in Counts Three and Four of the Third Amended Complaint. Voltage contends that Shoals seeks to improperly amend the Third Amended Complaint as it "relies on new facts and exhibits outside the four corners of its TAC [Third Amended Complaint]." Voltage Reply, ECF No. 148, at 4.

#### 2. *Counts One, Two, and Five.*

Voltage asserts in its reply that Shoals has waived its claims that its alternative designs infringe the '375, '376, or '295 Patents by not responding to its argument that the Third Amended Complaint does not allege an infringing act in the United States with respect to the alternative designs nor facts to support a plausible claim of infringement. Id. at 2.

## II.

### A. Motion to Dismiss Standard.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule

5

12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 558 (2007).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A court must consider all well-pleaded allegations in a complaint as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). "Determining whether a complaint states a plausible claim for relief will . . . be a

6

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

### B. Legal Analysis of Counts Three and Four.

The North Carolina Unfair and Deceptive Trade Practice Act ("UDPTA") states that "Unfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1(a). Originally enacted to give consumers aggrieved by unfair or deceptive business practices a private cause of action, the UDPTA has been held to protect businesses as well. See Food Lion, Inc. v. Capital Cities/ABC, Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996); United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988).

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); see Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Griffith v. Glen Wood Co., 184 N.C. App. 206, 217, 646 S.E.2d 550, 558 (2007).[4]

---

[4] Voltage cites Mountaineer Motors of Lenoir, LLC v. Carvana, LLC, No. 5:22-cv-171, 2023 WL 6931787, *6 n.5 (W.D.N.C. Oct. 19, 2023), for the proposition that "[b]ecause a common law claim for unfair competition and a UDTPA claim are not 'appreciably different,' the Court considers them in the same analysis." In Mountaineer Motors, the Western District of North Carolina cited two cases from the Middle District of North Carolina for this proposition. See Blue Rhino Global Sourcing Inc. v. Well Traveled Imports, Inc., 888 F. Supp. 2d 718, 721 n.1 (M.D.N.C. 2012) (quoting BellSouth Corp. v. White Directory Publishers, Inc., 42 F. Supp. 2d 598, 615 (M.D.N.C. 1999)). See also Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987)("As used in the statute, the words 'unfair methods of competition,' have not been precisely defined by the North Carolina courts, although it has been suggested that they encompass any conduct that a court of equity would consider unfair." (citing Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 404, 248 S.E.2d 739, 746 (1978)). In its opposition, Shoals does not suggest that the court apply a different substantive standard to these two claims, instead considering them together. See, e.g., Shoals Opp'n, ECF No. 117, at 10 n.3 ("The Court should reject Voltage's invitation to graft an inapplicable standard onto Shoals's properly pleaded unfair

7

As for the first element, a plaintiff must show that the "defendant committed an unfair or deceptive act or practice." SciGrip, Inc., 373 N.C. at 426, 838 S.E.2d at 347. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . [A] practice is deceptive if it has the capacity or tendency to deceive." Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981); see Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007).

"The Act does not . . . define an unfair or deceptive act, 'nor is any precise definition of the term possible.'" Bernard v. Cent. Carolina Truck Sales, Inc., 68 N.C. App. 228, 229–30, 314 S.E.2d 582, 584 (1984) (quoting Wachovia Bank & Trust Co. v. Smith, 44 N.C. App. 685, 690, 262 S.E.2d 646, 649 (1980)). A trade practice "is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C., 174 N.C. App. 49, 59, 620 S.E.2d 222, 230 (2005) (citing Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987)).

North Carolina "courts have long recognized that claims for misappropriation of trade secrets and tortious interference with contract may form the basis of a UDTP claim." Southern Fastening Systems v. Grabber Constr. Prods., No. 14CVS04260, 2015 WL 2031007, at *11 (N.C. Sup. Ct. Apr. 28, 2015) (citing Drouillard v. Keister Williams Newspaper Servs., Inc., 108 N.C. App. 169, 172–73, 423 S.E.2d 324, 326–27 (1992)); Static Control Components, Inc. v. Darkprint Imaging, Inc., 135 F. Supp. 2d 722, 731 (M.D.N.C. 2001) (same).

---

competition claims.). As such, the court will consider the motions to dismiss Counts Three and Four as involving the same body of North Carolina unfair competition law.

8

Voltage suggests that the court analogize Shoals's allegations of misuse of Confidential Business Information from the 1438 ITC Investigation to a theft of trade secret claim and cites cases dismissing theft of trade secret cases for failure to specify the purloined information. Voltage Mem., ECF No. 87, at 4 n.4. The unfair and deceptive trade practice alleged in the Third Amended Complaint is that Voltage developed alternative designs by misusing Confidential Business Information disclosed by Shoals during the 1438 ITC Investigation in violation of a protective order. As such, the wrong alleged by Shoals is very much akin to a trade secret misappropriation claim.

To plead misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." VisionAIR, Inc. v. James, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (citing Analog Devices, Inc. v. Michalski, 157 N.C. App. 462, 468, 579 S.E.2d 449, 453 (2003)). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is 'insufficient to state a claim for misappropriation of trade secrets.'" Washburn v. Yadkin Valley Bank and Trust Co., 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008) (quoting VisionAIR, 167 N.C. App. at 511, 606 S.E.2d at 364)). Plainly, Shoals's Third Amended Complaint fails to meet this standard as it does not specifically identify the Confidential Business Information Voltage allegedly misappropriated to create its alternative designs.

The Eastern District of North Carolina addressed similar allegations in Sysco Machinery Corp. v. DCS USA Corp., No. 5:23cv134, 2023 WL 7752051 (E.D.N.C. Nov. 15,

9

2023). There, the court found Sysco's broad and sweeping allegations of misappropriation of "certain files, technical information stored in data slots, confidential files and machine layouts, and a compilation of machinery, software, and confidential information," id. at *2 (internal quotations omitted), "lack[ed] the specificity required to plead a claim for misappropriation of trade secrets." Id. For the same reason, the court dismissed Sysco's companion UDTPA claim, stating "as the Court has determined that Sysco has failed to state a claim for misappropriation of trade secrets or tortious interference with prospective economic advantage, those claims cannot be used to support Sysco's unfair and deceptive trade practice claim." Id. at *4.

Shoals argues that its UDTPA claim should not be evaluated under the rubric pertaining to a theft of trade secret case, but rather "stands alone as a distinct action." Charah, LLC v. Sequoia Servs., LLC, No. 19 CVS 5795, 2020 WL 1903953, at *8 (N.C. Sup. Ct. April 17, 2020) (citing Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC, No. 00-CVS-10358, 2003 WL 21017456, at *50 (N.C. Sup. Ct. May 2, 2003)). "Therefore, so long as the complaint includes sufficient allegations of potentially unfair or deceptive conduct, the claimant may still maintain a UDTP claim, notwithstanding the dismissal of breach of contract or tort causes of action based on the same conduct." Charah, 2023 WL 1903953, at *8. While the court in Charah noted that "[t]his court has allowed UDTP claims based on misuse of confidential information to survive a motion to dismiss under Rule 12(b)(6)," id. at *9, the confidential information allegedly misused in Charah was far more specifically pled than Shoals does here. Unlike Shoals's allegations in this case, plaintiff Charah alleged that defendant Sequoia encouraged Charah's former employee to "share a daily report containing Charah's

10

confidential information in order to compare Sequoia's daily report templates with those of Charah's." Id. at *8. In contrast to Shoals's cursory allegations, the complaint in Charah provided specific details of the alleged confidential information used unfairly by Sequoia.[5] Thus, standing alone, Shoals fails to plead with specificity in the Third Amended Complaint the Confidential Business Information that Voltage allegedly used to develop its alternative designs. While the court agrees with Shoals that Rule 8 of the Federal Rules of Civil Procedure "requires only enough factual matter to give rise to a reasonable inference of liability," Shoals Opp'n, ECF No. 116, at 12, Shoals's Third Amended Complaint is so cursory that it fails to rise to this level.

Nor is it likely that Shoals could in good faith amend its Third Amended Complaint to allege that Voltage has engaged in unfair competition as regards its alternative designs. Voltage's corporate representative, Abram Olson, testified at the February 25, 2026, bench trial that Voltage had not sold any alternative design products. Trial Tr., ECF No. 411, at 116–121. Further, Shoals's opposition brief relies heavily on references in a Voltage privilege log to support its claim that Voltage used Shoals's ITC 1438 Investigation Confidential Business Information to develop Voltage's alternative designs. Shoals Opp'n, ECF No. 116, at 4. Subsequently, at Shoals's request, the court reviewed in camera eleven Voltage alternative design documents from its privilege log along with an ex parte letter from Voltage's counsel,

---

[5] Charah alleged that its former employee "had access to Charah's confidential information, including, but not limited to, the following: information related to coal ash excavation, processing and removal techniques and methods, technical data regarding coal ash management and disposal, personnel data, project requirements, labor rates, consumer-pricing information, customer contracts, client-specific forms, client- and project-specific documents such as safety and project readiness documents, and subcontractor information including pricing, rates, and markup information." Id. at *2.

11

White & Case. Following this in camera review, the court denied production of the documents on the privilege log, stating that "the court cannot discern anything to suggest the involvement of Shoals' Product Samples in violation of paragraph 9 of the Stipulation Among The Parties Concerning Product Samples entered in International Trade Commission Investigation No. 337-TA-1365 on September 21, 2023." Order, ECF No. 383.

The allegations of the Third Amended Complaint also fail to meet the second and third prongs of a prima facie case of unfair trade practices. While ¶ 47 alleges in conclusory fashion that "[o]n information and belief, Defendants have or intend to take to market these purported 'alternative designs,'" the Third Amended Complaint contains no facts to suggest that Voltage has sold or offered for sale any product using Shoals's Confidential Business Information obtained in violation of an ITC protective order. As such, there are no facts alleged in the Third Amended Complaint sufficient to meet either the in commerce or injury prongs of the unfair competition prima facie case.

Accordingly, the court **GRANTS** Voltage's motion to dismiss Counts Three and Four of Shoals's Third Amended Complaint. The court **DENIES** Voltage's motion to dismiss as regards Counts One, Two, and Five and will have an opportunity at the Rule 56 stage or at trial to assess whether Shoals has evidence of infringement of the '375, '376, and '295 Patents by Voltage's alternative designs.

An appropriate order will be entered.

Entered: March 23, 2026

Michael F. Urbanski
Senior United States District Judge

12